## THE UNITED STATES DISTRICT COURT REGION
## FOR THE NORTH DISTRICT OF OHIO
## EASTERN DIVISION

JEROME FONTAINE SHOEMAKE )
147 North Mulberry Street )
Mansfield, OH 44902, )

        Plaintiff, )

        -vs- )

Ohio Depart. of Rehabilitation & Correction, )
Edward Sheldon, Janet Tobin, John Bond, )
William Salas, 4545 Fisher Road, Suite D, )
Columbus, Ohio, 43228 )

        Defendants. )

Case No. **1:21 CV 15**

Judge:
Magistrate **JUDGE GWIN**

**MAG. JUDGE BAUGHMAN**

Plaintiff's Complaint

**FILED**

JAN 0 4 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

### COUNT I.

1. **Title VII** of the Civil Rights Act of 1964 forbids an employer from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" by **Title VII**, or the employee's participation in "an investigation, proceeding, or hearing under [**Title VII**]". See 42 U.S.C. § 2000e-3(a); see, also, Section 1983.[1]

2. This action is brought on behalf of Jerome Fontaine Shoemake ("Shoemake") to enforce the provisions of **Title VII** of the Civil Rights Act of 1964, as amended, 42

---

[1] Shoemake alleges § 1983 claims for retaliation based on ODRC's alleged violation of (1) Title VII, (2) Ohio Revised Code §§§ 4112.02 (A), (I), and (J), (3) **First Amendment**, and (4) **Fourteenth Amendment** incidents. *See* Plaintiff's Complaint ¶¶ 2, 3, 4, 6, 7, 18(h), 18(y), 44, 46, 47 and 48. The Sixth Circuit has "held that an employee may sue his public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution. See *Grano* v. *Department of Development, City of Columbus*, 637 F.2d 1073 (6th Cir. 1980).").

U.S.C. § 2000e-2 or 2000e-3 [Sections 703(a)(1) or 704a], *et seq.*, ("Title VII"); Civil Rights Act of 1991; Ohio Revised Code § 4112.02(I), which provides it is unlawful for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice [as defined in § 4112.02] or because that person has made a charge, testified...or participated in any manner in [a]ny investigation, proceeding, or hearing under [§§ 4112.01 to 4112.07]; O.R.C. § 4112.02(J) forbids any person to aid, abet, incite, compel, or coerce the doing of any act declared by [§ 4112.02] to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with [the law] or any order issued under it, or to attempt directly or indirectly to commit any act declared by [§ 4112.02] to be an unlawful discriminatory practice; Ohio Revised Code § 4112.99; Ohio Administrative Code § 4112-1-01 (I) and (O); First Amendment; Fourteenth Amendment; and § 1983.

## COUNT II.

3. **ODRC** engaged in a pattern and practice of illegally obstructing the "due process rights," "speech," and "civil rights" of Shoemake, which violated the following: U.S. First Amendment; U.S. Fourteenth Amendment; Ohio R.C. § 2921.45; Section 1983; and, **Article I**, Ohio Constitution (1851), Sections 11 and 16. When read in conjunction with Sections 1, 2, and 19, Section 16 of the Ohio Constitution is the equivalent of the Fourteenth Amendment's 'due process' clause.

4. Without Shoemake's consent, **ODRC** continued to deduct fair share fees from his paycheck in violation of Ohio R.C. § 4117.09(B)(2) from March 2, 2019

through July 16, 2020.[2] **See Exhibit AA**. Defendant ODRC, pursuant to Ohio Rule 11, improperly certified it was not deducting fees from Shoemake's paycheck in violation of Ohio R.C. § 4117.09(B)(2) to the Ohio Court of Claims.

5. Shoemake claims that **ODRC** violated his constitutional rights by (1) collecting dues from his wages without his consent; (2) retaliation for filing charges with the **EEOC**, Ohio Department of Administrative Services, Equal Employment Division ("DAS EOD"); (3) filing grievances with the Ohio Civil Service Employee Association ("OCSEA-AFSCME"); (4) for openly speaking out against employment discrimination (e.g., verbally and via email) at Mansfield Correctional Institution ("ManCI"); (5) **ODRC** violated Ohio Revised Code § 4112.02(J) concerning aiding and abetting William Salas to intimidate Shoemake by calling him "hijo de puta" and "viejo loco" with impunity (See Katy Rose-Palmer Aff'd (**Exhibit FF**)); and, (6) Shoemake was labeled in retaliation by **ODRC** as "*a potential doer of workplace violence*" and removed from his job as a correction officer under the false pretext that Shoemake was a threat to co-workers, inmates, and himself because Shoemake was falsely alleged to carry a firearm while performing his duties as a correction officer at **ManCI**. Hence, **ODRC** took **adverse actions** that were capable of deterring a person of "ordinary firmness from continuing to engage in that conduct" for fear of reprisal and/or termination:

    (a) **ODRC** must require Shoemake submit to an examination under
    Ohio A.C. § 123:1-30-03 prior to involuntarily disability separating

---

[2] In re *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) ("we are persuaded that deprivations of First Amendment rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation").

Shoemake, unless **ODRC** has other evidence of the disability. See Ohio Administrative Code 123:1-30-01(B). See, e.g., *Dalton v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶ 36.[3]

(b) **ODRC**'s adverse action was a subterfuge for prohibited retaliation and Ed Sheldon (Warden), Janet Tobin (Labor Relation Rep.), and John Bond (Dir. Human Resources) would have terminated Shoemake for refusing to submit to the Independent Medical Examination ("IME") under **insubordination** to coverup **ODRC**'s retaliatory actions.[4]

6. Shoemake's petitioning fell under the protection of the **First Amendment**: therefore, Shoemake had a right to be free from retaliation for engaging in protected activity under **Title VII**, 29 U.S.C. § 623, 42 U.S.C § 2000e-3(a), and the **First & Fourteenth Amendments** of the Federal Constitution.[5]

---

[3] ODRC set the same employment trap for Mr. Robert Dalton in the following case: *Dalton v. Ohio Dep't of Rehab. & Corr.* No. 13AP-827, at *1 (Ohio Ct. App. 2014). Shoemake is asking the Court to read paragraphs ¶ 11, ¶ 15, and ¶ 39 of the cited court case. The Defendant is well adapted to using stealth to get employees fired under Ohio Admin. Code § 123:1-30-03 (D). It is no accident that Ed Sheldon (Warden, ManCI) laid this employment trap, hoping to nullify illegal retaliatory actions against Shoemake, which violate **Title VII**, by setting a despicable employment trap for *insubordination* under a false light narrative that Plaintiff was "a potential doer of workplace violence" and a danger to co-workers, inmates, and himself because he carries a firearm while performing his job duties as a correction officer.

[4] See, e.g., *Dalton v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶ 39 ("ODRC fired Dalton for refusing to submit to the IME.").[4] See Ohio Administrative Code **123:1-30-03(D)**(*"Employee's failure to appear for examination. An employee's refusal to submit to an examination, the unexcused failure to appear for an examination, or the refusal to release the results of the examination amounts to [insubordination], punishable by the imposition of discipline up to and including removal."*).

[5] "Retaliation by public officials against the exercise of **First Amendment** rights is itself a violation of the **First Amendment**." See *Holzemer v. City of Memphis* 621 F.3d 512 (6th Circuit 2010) (Citing Zilich, 34 F.3d at 364 (citation omitted); see, also, *Smith v. Ark. State Highway Employee Local 1315*, 441 U.S. 463, 465 (1979) (per curiam) (noting that public employees "surely can . . . petition openly, and [be] protected by the **First Amendment** from retaliation for doing so."). Hence, a reasonable trier of fact would conclude Shoemake's claims for retaliation constitutes a violation of his constitutional rights under 42 U.S. Code § 1983.

7. On February 20, 2020, the Ohio Court of Claims made the following ruling regarding Case No. 2019-00957 JD (e.g., Shoemake v. Ohio Dept. of Rehab. & Corr.): "Because this court is without jurisdiction to consider claims for relief premised upon alleged violations of the **United States Constitution**, plaintiff's claim that defendant and Ohio Department of Administrative Services ("DAS") acted in concert to violate his "due process rights," "speech," and "civil rights" must be dismissed. Furthermore, plaintiff's claim that defendant violated his constitutional rights by <u>deducting union dues or fees from his wages</u> must also be dismissed for lack of subject matter jurisdiction." **See Exhibit BB.**

## COUNT III.

8. In re <u>*U.S. v. Owens*</u>, 54 F.3d 271, 275 (6th Cir. 1995) ("This Circuit has established a rule for determining when judicial estoppel should be invoked. Judicial estoppel "forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." *Teledyne Industries, Inc. v. NLRB*, <u>911 F.2d 1214, 1217</u> (6th Cir. 1990)."). **ODRC** has already denied to the Ohio Court of Claims that (1) **ODRC** deducted union fair share fees from Shoemake's paycheck without Shoemake's consent; (2) Shoemake did not know what William Salas said if Shoemake does not speak [any] Spanish; (3) **ODRC** has already denied to the Ohio Court of Claims that stigmatizing a non-violent African American male (e.g., Shoemake) as mentally unstable ("crazy"), and a "potential doer of workplace violence" is capable of being viewed as highly offensive and retaliatory to a reasonable person.

## COUNT IV

9. On a continuing violation **ODRC** has created a hostile work environment for Shoemake since he filed various charges of discrimination and retaliation (Ohio Revised Code § 4112.02(I)) against **ODRC** cited in this complaint. The actions of Defendant ODRC, Ed Sheldon, John Bond, Janet Tobin, and William Salas have been persistent enough to create an abusive work environment for Shoemake. Hence, under Ohio Revised Code § 4112.02(J) the immunity exception in R.C. 2744.03(A)(6)(c) applies to "any person" cited herein.

## JURISDICTION

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4); and, with respect to pendent state claims and claims under the Ohio Civil Rights Act, Chapter 4112 of the Ohio Revised Code, jurisdiction is invoked pursuant to 28 U.S.C. § 1367.

11. **ODRC** is a governmental corporation organized under the laws of the State of Ohio and is otherwise an "employer" as defined by Ohio R.C. § 4117.01(B), Ohio R.C. § 4112.02 and Ohio R.C. § 4112.01(A)(2) in respect to its corporate personhood. See, also, 4112.02(J). Furthermore, **ODRC** is an "employer" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

12. The Equal Employment Opportunity Commission ("EEOC") received a timely charge (i.e., EEOC Charge No. 522-2019-02220) filed by Jerome Fontaine Shoemake on or about July 16, 2019, for unlawful retaliation after filing **EEOC Complaint No. 532-2018-00460** for sex, race, and age discrimination. In his charge,

Shoemake alleged, *inter alia*, that he had been discriminated against and harassed based on age by his supervisors and that he was retaliated against because he engaged in activity protected under **Title VII** and Chapter 4112 of the Ohio Revised Code.

13. The **EEOC-CLFO** issued Shoemake a NOTICE OF SUIT RIGHTS, mailed on October 5, 2020.[6]

14. All conditions precedent to the filing of this lawsuit have been performed or have occurred as a continuing violation.

## VENUE

15. The Northern District of Ohio at Cleveland is the appropriate venue under 28 U.S.C. § 1391 because the event herein arose in Richland County Ohio.

## PROTECTED ACTIVITY

16. The information Shoemake provided the Defendants was sufficiently lucid that a sensible official would understand what he and/or she was doing violated those rights.[7]

---

[6] In re *Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F. Supp. 3d 704, 723 (N.D. Ohio 2014) ("As noted above, the Sixth Circuit has determined the ninety-day time limit begins to run on the fifth day following the EEOC's mailing of a right-to-sue letter to the claimant's residential address, "unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period." *Graham–Humphreys,* 209 F.3d at 557.")

[7] In re *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (...*a reasonable official would understand what he is doing violates that right*); Saucier, 533 U.S. at 201m 121, S.Ct. 1769; *see, also, Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

17. Investigator April L. Alexander (EEO Regional Program Administrator **ODRC**, Northern Division) wrote: "…Charging Party entered the interview discussing his intentions of only going through the motions, in order to try his case in federal court." (Author: April Alexander, March 19, 2018: SEOD 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 (1371) – Shoemake *v*. Ohio Department of Rehabilitation and Corrections, page 10, paragraph 1).[8]

18. Shoemake's threat to file a lawsuit serves to expose a **matter of public concern** (e.g., illicit discrimination based on sex, race, age, and retaliation) vis-à-vis alleged discriminatory practices at **ManCI**.

19. Shoemake engaged in protected petitioning activity lodged with **ODRC**, **ManCI**, **DAS EOD**, **OCSEA-AFSCME**, Ohio U.S. Attorney General and the **EEOC-CLFO** by doing the following:

(a.) Issuing written complaints concerning discrimination that were sent via emails to Mr. Ed Sheldon (Warden, **ManCI**), Ms. Janet Tobin (Labor Relations Rep., **ManCI**), Mr. John Bond (Dir. Human Resource, **ManCI**), Ms. Angela Rose (Human Resource Assistant, **ManCI**), and William A. Salas (Housing Director, **ManCI**); the Ohio Civil Service Employee Association (**OCSEA-AFSCME Local 11**, Union Leaders); Ms. Jennifer Adair (EEO Manager, **DAS EOD**), et al.; Ms. Kristine Cadek (EEO Regional Program Administrator ODRC, Southern Division); Ms. April L. Alexander (EEO

---

[8] In re *Jackson v. City of Columbus*, 194 F.3d 737, 756-57 (6th Cir. 1999) the Sixth Circuit Court set a precedent, "*An employee engages in **protected activity** under the 14th Amendment when he threatens to file a lawsuit of public concern.*"

Regional Program Administrator **ODRC**, Northern Division); Ms. Sabrina Shifman (Senior Investigator, **EEOC**) Cleveland, Ohio, Field Office; Mr. Ed Banks (Managing Director Office of Human Resources, **ODRC**); Ms. Pamela Osborne (State EEO Coordinator **DAS EOD**); Mr. Eric Seabrook, (Deputy Director, State EEO Coordinator, **DAS EOD**); Mr. Salvador Lopez (Investigator, **EEOC Charge No. 532-2018-00460**) Cleveland, Ohio, Field Office; Mr. Eric Dreiband, U.S. Department of Justice, whereby Plaintiff filed complaints concerning <u>Conspiracy Against Rights</u> and <u>Deprivation of Rights Under Color of Law under Title 18 § § 241 and 242</u>, with the Office of Special Litigation; and, Maria M. Colon (Investigator, **EEOC Charge No. 532-2019-02220**) Cleveland, Ohio Field Office;

(b.) Shoemake filed DRC-2017-04413-03 Step-1 grievance concerning unlawful discrimination with **OCSEA-AFSCME** (meeting date 12/05/2017);

(c.) Discrimination Complaint Number 1371 (SEOD 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 (1371)) was filed for investigation with the Ohio Dept. of Administrative Services, Equal Opportunity Division ("DAS EOD") on Monday, November 20, 2017;

(d.) Shoemake filed DRC-2017-04413-03 Step-2 grievance regarding unlawful discrimination with **OCSEA-AFSCME** on November 27, 2017;

(e.) Shoemake received Defendant ODRC's "Position Statement" regarding discrimination charges contained in SEOD 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 (1371) on March 26, 2018, from **DAS EOD**;

(f.) April 9, 2018 (first draft) and April 10, 2018 (final draft) Shoemake's Request for Appeal *re* DAS EOD 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 (1441) (e.g., Shoemake v. ODRC) was sent to Jennifer Adair (EEO Manager, DAS EOD), Management (ODRC), Management (ManCI) and Co-worker (Katelyn Bundschuh). April 12, 2018, Janet Tobin (Labor Relation Rep., ManCI) ordered Shoemake to "**cease**" and "**desist**" engaging in **protected activity**. See **Exhibit 16**, pp. 11-12; see, also, **Exhibit 3**.[9]

(g.) Janet Tobin conducted her meeting on April 12, 2018, because Shoemake "opposed, complained of, and sought remedies for, the unlawful race, sex, and age discrimination harming him" that occurred at **ManCI**.[10]

(h.) Janet Tobin's causal action—Shoemake sending an appeal complaining of overt discrimination—triggered her **adverse action** in an interval sufficient to satisfy Shoemake's claim of retaliation.[11]

(i.) Janet Tobin retaliated against Shoemake in the face of a perceived risk that her adverse action would violate Shoemake's **First Amendment** and Section 704(a) of **Title VII**, 42 U.S.C. § 2000e-3(a) rights.[12]

(j.) During the April 12, 2018 meeting with Janet Tobin, Shoemake was informed by her, "Some supervisors 'I' sent 'my' appeal (DAS Charge No.

---

[9] See *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, which affirms public employers cannot punish individual for "perceived offensive" and/or "unwelcome speech" that does not interfere with the rights of others.

[10] See *Nassar v. University of Texas Southern Medical Center*, 570 U.S., 133 S. Ct. 2517 (2013); see, also, *Jackson v. City of Columbus*, 194 F.3d 737, 756-57 (6th Cir. 1999).

[11] See, *e.g.*, *Smith v. The City of Salem*, 378 F.3d 566, 571 (6th Cir.2004) (4-6 day interval was sufficient without more to satisfy plaintiff's case of retaliation.).

[12] See *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 536 (1999).

1441) to did not want to receive it or any further emails regarding Shoemake's EEO claim." See **Exhibit 3**, pp. 4-6.

(k.) Shoemake filed **EEOC Charge No. 532-2018-01556**, which is **DAS EOD** Complaint No. 1487 on <u>April 17, 2018</u>. **EEOC** Investigator, Salvador Lopez, completed a determination of no reasonable cause letter on <u>July 9, 2018</u>, prior to **DAS EOD** exhausting its administrative right to investigate the retaliation claim, which was [still pending] before **DAS EOD** in June of 2019. Shoemake had not exhausted his administrative obligations apropos **DAS EOD** (i.e., DAS EOD Charge No. 1487) prior to Salvador Lopez concluding the **EEOC** investigation.

(l.) Shoemake argued **ODRC**'s non-discriminatory reasons were a **pretext** to hide discriminatory actions regarding SEOD 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 (1371), by emailing "agents" of **ODRC, DAS EOD, EEOC-CLFO**, and **OCSEA-AFSCME** <u>SHOEMAKE'S APPEAL REQUEST</u> to the Ohio Department of Administrative Services circa April 9, 2018 and April 10, 2018;

(m.) Shoemake was ordered to a meeting April 12, 2018, with Janet Tobin (Labor Relation Representative, ManCI) and threaten to be disciplined with regards to "**employee harassment**" because <u>Shoemake's Appeal Request</u> for **Charge DAS EOD 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 (1441)** was deemed "**offensive**" and "**unwelcomed**" by upper management and Shoemake was ordered to "**cease**" and "**desist**" engaging in protected activity in violation of **Title VII** and the United States **First Amendment** ( See **Exhibit 3, pp. 12-13**);

(n.) On April 19, 2018, **EEOC-CLFO** received <u>ODRC's Position Statement</u> (i.e., EEOC Charge No. 532-2018-00460) that April L. Alexander (EEO Regional Program Administrator, ODRC), filed with **DAS EOD** on March 19, 2018, which **DAS EOD** referenced as Charge No. SEOD 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 (1371) - Jerome Shoemake v. Mansfield Correctional Institution;

(o.) Shoemake filed a complaint with **DAS EOD** on April 26, 2018, regarding the unlawful action taken by Janet Tobin (Labor Relation Representative, ManCI) on April 12, 2018;

(p.) This is what transpired after Shoemake's opposition to Janet Tobin's unwelcomed discrimination on April 26, 2018: (1.) On May 17, 2018, Mr. John Bond (HR Director) violated **HIPPA Privacy Rule** by asking Shoemake's work partner (Roger Henley) the status of Shoemake's mental health (See **Exhibit CC**: Shoemake asked DAS EOD to have ODRC preserve the video of John Bond in the 2-A Housing Unit 5/17/2018); and, (2.) on Monday, May 21, 2018, Mr. William A. Salas tried to get an inmate (Daniels III) to allege that Shoemake and Henley were possibly supplying him (Daniels III) with contraband (**Exhibit DD**). These acts of retribution by agents of the company occurred within 25 days after Shoemake alleged being retaliated against by **ODRC** for filing **DAS EOD Charge 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 (1441)**. See **Exhibit 16**, p. 16; see, also, **Exhibit 3**.

(q.) **ODRC** Investigator (i.e., Kris Cadek) released the <u>Respondent's</u> <u>Position Statement</u> denying retaliation via encrypted email on June, 21, 2018. Cited as Case Number: SEOD 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 (1441) – Shoemake v. ManCI;

(r.) May 17, 2018, John Bond (Director Human Resources, ManCI) engaged in **heightened scrutiny** by asking Correction Officer Roger Henley if Shoemake was "behaving normally," "have you observed any changes in him," "he is lucky to work with you because you care about him," "I recall how you helped him with his suicidal incident at work several years back . . . "[13] Moreover, John Bond was speaking loud enough for an inmate to hear him violate Shoemake's **HIPAA Privacy Rules** (See **Exhibit CC**);

(s.) Friday, May 25, 2018, 2:50 AM, Shoemake sent an email to Sabrina Shifman (Senior Investigator, EEOC Cleveland, Ohio, Field Office) regarding "Illegal-Profiling, Heightened Scrutiny, and Retaliatory Conduct" regarding the actions of William A. Salas. **See Exhibit DD** referencing **EEOC Charge No. 532-2018-00460** and **DAS EOD Charge No. 1441** (retaliation *re* William Salas);

---

[13] John Bond (HR Director, ManCI) lacked an honest belief that Shoemake was having any mental issues or feelings of suicide on the day he was probing and formulating leading questions to Correction Officer Henley. John Bond's suggestive interrogation was designed to lean towards established biases and assumptions and was made up of specific information which ODRC or John Bond (interrogator) wished to confirm to separate Shoemake from employment for filing claims discrimination and retaliation. See <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 494 (6th Cir. 2001) ("the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. See <u>Smith v. Chrysler</u>, 155 F.3d 799, 806-07 (6th Cir. 1998) (citing <u>Fischbach v. District of Columbia Dept. of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[I]f the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.")." **See Exhibit CC.**

(t.) June 14, 2018, **DAS EOD** finds **ODRC** had not thoroughly investigated all issues and there may be a clear violation of EEO Policy *re* **DAS EOD Charge No. Charge SEOD 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 (1371)**. "As a result, EOD accepts appeal on this basis. **ODRC** is ordered to provide a supplemental finding for determining if the scoring caused differential treatment of Shoemake's application, specific to the scoring of the two degrees, thus causing a violation of EEO Policy";

(u.) Tuesday, July 3, 2018, 8:56 PM, Shoemake filed an appeal with Jennifer Adair (EEO Manger, DAS EOD) regarding Case No. SEOD 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 (1441), **See Exhibit 3**;

(v.) September 9, 2018, Shoemake filed Grievance DRC-2018-02964.03 with the Ohio Civil Service Employee Association (OCSEA-AFSCME) *re* unwelcomed acts of intimidation and hostilities by William A. Salas.

(w.) Tuesday, September 11, 2018, 2:12 AM, Shoemake sent an email to Jennifer Adair (EEO Manager, DAS EOD) and Sebrina Shifman (Senior Investigator, EEOC) outlining the retaliatory actions of Janet Tobin towards Shoemake. **See Exhibit EE** referencing **EEOC Charge No. 532-2018-00460** and **DAS EOD Charge No. 1441** (retaliation); see, also **Exhibit 3**;

(x.) Shoemake filed Retaliation Complaint No. 1487, which was accepted for investigation by **DAS EOD** on September 12, 2018, after William A. Salas (i.e., Housing Manager, **ManCI**) called Shoemake "viejo loco" and "Hijo de puta" in his native language. The incident was witnessed by Ms. Katy

Rose-Palmer (affidavit), coworker, correctional officer (**See Exhibit FF; see, also, Exhibit 16 p. 7**);

(y.) On October 3, 2018, John Bond (Dir. Human Resource, ManCI) **"Investigation of Summary Report Workplace Violence"** concluded that William Salas did not engage in physical intimidation and use of profanity towards Shoemake (**See Exhibit FF**);

(z.) In the **"Investigation of Summary Report Workplace Violence"**, William Salas admits he was conversing in Spanish with Shoemake, but with assistance from John Bond (Dir. HR, ManCI) alters what he actually said to Shoemake in Spanish to avoid being disciplined for workplace intimidation (See Ohio R.C. §§ 4112.02(I) and (J));

(aa.) Shoemake originally filed **EEOC Charge Number 532-2018-00460** on December 5, 2017 (e.g., race, sex, and age discrimination);

(bb.) Shoemake filed Retaliation Complaint No. 1557, which was accepted for investigation by **DAS EOD** circa March 9, 2019, because Mr. Ed Sheldon (Warden, **ManCI**) labeled Shoemake "*a potential doer of workplace violence,*" then placed Plaintiff on administrative leave from March 8, 2019 through April 5, 2019, pending a psychological evaluation because of Mr. Sheldon's '**false light**' testimony that Shoemake carries a firearm (weapon) while performing his work duties as a Correctional Officer and was therefore a [threat] to inmates, coworkers, management, and himself;

(cc.) Circa March 25, 2019, Shoemake sent a letter via email to Salvador Lopez (Investigator, EEOC-CLFO), Jennifer Adair (EEO Manager, DAS EOD) and Ed Sheldon (Warden, ManCI), which castigated Sheldon for his intolerable aberrant behavior and Negrophobia as typified by the anxious fear that a nonviolent black man (i.e., Shoemake) is a threat to society because he engaged in **protected activity** to secure guaranteed rights under Chapter 4112.02 of the Ohio Revised Code, Ohio R.C. § 2921.45, **Title VII**, First Amendment, Fourteenth Amendment and § 1983 (**See Exhibit GG**);

(dd.) On Friday, March 29, 2019, Shoemake sent an email to Salvador Lopez (Investigator, EEOC-CLFO) and Jenifer Adair (EEO Manager, DAS EOD) regarding protected activity, retaliation, temporal proximity, and adverse employment actions of **ODRC**. The March 29, 2019, letter was written because Ed Sheldon (Warden, ManCI), Janet Tobin (Labor Relations, ManCI), and John Bond (HR Director, ManCI) held a meeting with Shoemake on **March 8, 2019**, and walked Shoemake off the job for being "*a potential doer of workplace violence*". Shoemake told all parties involved in the decision on March 8, 2019 that their action was retaliation for him engaging in **protected activity**. Suspending Shoemake from work for approximately 29 days was an attempt to dissuade Shoemake from engaging in **protect activity** with regard to **EEOC Charge No. 532-2018-00460** (e.g., race, sex, and age discrimination (**See Exhibit HH**); continuing violation of

protected activity, retaliation, and adverse employment actions that occurred from 2017 to the present (**See Exhibit JJ**));

(ee.) May 8, 2019, Zenith Milton (Investigator, DAS EOD) regarding **DAS EOD Complaint No. 1557** (retaliation re Ed Sheldon) states, "This e-mail serves to inform you that EEO Discrimination Complaint #1557 has been rejected and should be closed (See **Exhibit KK**; see, also **Exhibit 17**)."

(ff.) May 17, 2019, Shoemake filed a complaint with the U.S. Department of Justice under Title 18, U.S. Code, Sections 241 and 242 alleging **DAS EOD** has 60 days under Ohio Admin. Code §§ 123:1-49-06 and 07, to complete its investigations. **DAS EOD Complaint No. 1371** was filed November 20, 2017, and on May 17, 2019, **DAS EOD** was five hundred and forty-three-days derelict in its duties to resolve **Complaint No. SEOD 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 (1371)** [Note: SEOD 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 (1371) is the foundation for EEOC Charge No. 532-2018-00460];

(gg.) On May 24, 2019, **DAS EOD** 'counsel and procure' **ODRC** by denying the Appeal Request regarding *Shoemake v. Department of Rehabilitation & Correction*, Complaint No. 1371 for said reasons: "*The reasons stated are either beyond the scope of the original investigation or are introducing new issues which cannot be addressed on appeal because they were not part of the original filing.*" **DAS EOD** fully knew **ODRC** had withheld Public Information Requests from Shoemake that violated Ohio

Revised Codes §§ 149.43 B(1) and (3), and engaged in prohibited discrimination pursuant to Ohio Revise Code §§ 4112.02(I) and (J);

(hh.) With regards to **DAS EOD Complaint Nos. 1371, 1441, 1487 and 1557, DAS EOD** aided and abetted **ODRC** as a conduit, "cat's paw" and/or "rubber stamp" to give effect to Defendant ODRC's (1) discriminatory animus towards Shoemake regarding unlawful discrimination, (2) harassment, (3) hostile work environment, and (3) repeated retaliatory conduct.[14] Therefore, **DAS EOD** turned a [blind eye] to **ODRC**'s wanton infringements on Shoemake's rights pursuant to Ohio Revised Code 4112.02(A), 4112.02(I), 4112.02(J), Title VII, First Amendment, and the Fourteenth Amendment;

(ii.) Tuesday, May 28, 2019, 10:22 AM, Shoemake received an email from Jennifer Adair (EEO Manager, DAS EOD) stating the following: "The Equal Opportunity Division of the Department of Administrative Services has closed discrimination complaint #1371";

(jj.) Tuesday, May 28, 2019, 10:05 AM, Shoemake received an email from Jennifer Adair (EEO Manager, DAS EOD) stating that Case No. DAS EOD 1441 was still open "waiting for EOD to issue an appeal acceptance or rejection letter (**See Exhibit HH**)";

(kk.) Wednesday, September 23, 2020, 1:05 PM Shoemake sent Sabrina Shifman (Senior Investigator, EEOC-CLFO) and Maria Colon

---

[14] In re *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (*acted as "cat's paw" to effect the recommenders' animus.*).

(Investigator, EEOC-CLFO) an email proving Ed Sheldon had lied under oath when he stated in a notarized document, **"To the best of my knowledge, Shoemake (i.e., "Charging Party") has not reported [any other] incident of harassment, intimidation or retaliation in the <u>past year</u>.** There are no Incident Reports on file from Charging Party since September 8, 2018 (**See Exhibit LL**; see, also, Ohio Revised Code § 2921.11(perjury); see, also, Ohio Revised Code § 2921.13(A)(6) & (F)(1) (Falsification – before Notary Public))";

(ll.) September 26, 2019, Maria Colon (Investigator, EEOC-CLFO) posted on the **EEOC Portal** the <u>Defendant's Position Statement</u> and <u>Supplemental Position Statement</u> for **EEOC Charge No. 532-2019-02220** (retaliation for filing **EEOC Charge No. 532-2018-00460**; see, also, **DAS EOD Charge No. SEOD 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 (1371)**).

20. Circa March 6, 2019, Mr. Kurt Dahlby (2nd Shift Captain) made the allegation to Mr. Roger Henley (e.g., Shoemake's work partner in the 2-A Housing Unit) that **"Shoemake is a crazy individual"** and gave Mr. Henley a [direct order] not to talk to Shoemake while Shoemake was on administrative leave. However, Shoemake was not at work Wednesday, March 6, 2019, and was not placed on Administrative Leave until March 8, 2019. **See Exhibit JJ, page 7**.

21. Captain Kurt Dahlby's action is harmful under Ohio R. C. §§ 4122.02(I) and (J) and **Title VII** (e.g., § 2000e-3(a) [Section 704]) because it could well dissuade a

reasonable employee from making or supporting a charge of discrimination for fear of retaliation or loss of employment.[15]

22. Shoemake has not been disciplined by **ODRC** for abusing the sick leave policy.

23. Shoemake has not used any of his 2080 hours of stress leave while employed by **ODRC**.

24. March 7, 2019, Shoemake complained to agents of **ODRC** (e.g., Ed Sheldon, Janet Tobin and John Bond) about them violating the training policy by forcing him to complete all training (DRC Policy 39-TRN-02) prior to April 1, 2019.  The extant contract March 7, 2019,  specifically stated that training shall be completed by June 30. Shoemake also complained about the discrimination he was enduring at the hand of **ODRC** in that same email thread circa March 7, 2019 (See Plaintiff's Complaint ¶ 19).

25. Shoemake completed all his assigned training before April 1, 2019.

26. Shoemake was treated differently than other employees at Mansfield Correctional Institution who did not complete training prior to April 1, 2019, and were not subjected to (1) being labeled as a potential doer of workplace violence, (2) walked off the job March 8, 2019 in front of staff, (3) placed on administrative leave for engaging in **protected activity**, (4) forced to file an unwarranted disability claim

---

[15] (1) Administrative leave with pay might dissuade an employee that does not welcome unlawful acts of discrimination and is forced to take an unwelcome Independent Medical Exam (IME) from engaging in **protected activity**; (2) being labeled as "viejo loco", "crazy", "hijo de puta", "violent", "a potential doer of work place violence" by your boss is an **adverse employment action** most rational employees know will hinder their future advancement with ODRC; (3) ODRC denied Shoemake a promotion to Correctional Program Specialist because of age and stereotyping Shoemake as a violent, marginally educated *re* social and behavioral sciences, and a crazy black male.

with the Ohio Dept. of Admin. Services, and (5) subjected to an unwelcomed Independent Medical Exam (IME) under the stress of being terminated (e.g., see Ohio Admin. Code § 123:1-30-03 (D)).

27. On March 8, 2019, Ed Sheldon had Shoemake, John Bond (Dir. Human Resources), Janet Tobin (Labor Relations), and Alvin Nettles (Union Steward) attend a meeting where Ed Sheldon placed Shoemake on administrative leave and ordered Shoemake to complete a **Disability Leave Benefits – Employee Initial Statement** for a <u>Disability Claim</u>. **See Exhibit B**.

28. In Shoemake's <u>Disability Claim</u> he wrote: "I must fill out this form because of Warden Ed Sheldon diagnosing me (he is not a medical professional) as being a potential perpetrator of workplace violence. As a condition for re-employment, I must ask Administrative Services to subject me to a mental evaluation for filing charges of discrimination against him." See **Exhibit B**, p. 1, ¶ 4.

29. After complaining about **ODRC** violating the training policy and engaging in unwelcomed discrimination on March 6 and 7, 2019, Ed Sheldon had Shoemake walked off the job March 8, 2019, as being "a potential doer of workplace violence".

30. The causation between Shoemake's **protected activity** on Wednesday, March 6, 2019, and Shoemake being walked off the job on March 8, 2019 was two days.[16] See **Exhibit 16**, p. 4-5 regarding Sheldon.

---

[16] See, e.g., <u>Smith v. The City of Salem</u>, 378 F.3d 566, 571 (6th Cir.2004) (4-6 day interval was sufficient without more to satisfy plaintiff's case of retaliation); <u>Mickey v. Zeidler Tool & Die Co.</u>, 516 F.3d 516, 525 (6th Cir.2008) (same-day interval); see <u>DiCarlo v. Potter</u>, 358 F.3d 408, 421 (6th Cir.2004) (13-day interval); see <u>Asmo v. Keane, Inc.</u>, 471 F.3d 588, 593 (6th Cir.2006) (two-month interval); see <u>Goller v. Ohio Department of Rehabilitation & Correction</u>, 285 Fed. Appx. 250 (6th Cir.2008) (two-month

31. Ed Sheldon's material adverse action happened after Shoemake filed the first EEOC complaint (i.e., EEOC Charge No. 532-2018-00460).

32. All lineup schedules in the possession of **ODRC** show the mark "%" for Shoemake from 2015 to the present, which designates Shoemake cannot be placed on a post that require the usage of a firearm (i.e., weapon).

33. In re _Shoemake v. Ohio Dept. Rehab. & Corr._ (Case No. 2019-00957 JD), ODRC's Amended Response to Shoemake's First Set of Interrogatories and Request for Production of Documents, states:

> "(6.) Produce the ODRC e-logs for 2014-2020 to show plaintiffs post assignments at ManCI. **Response:** "Objection; anything that occurred prior to September 13, 2017, would be time-barred as a basis for this action;. further, producing six years of documents would be unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. **Subject to and without waiving those objections, Defendant states that on a duty roster, the mark "%" indicates that an officer has opted out of firearms certification."**

34. Since Defendant ODRC, Ed Sheldon, John Bond, and Janet Tobin knew Shoemake does not carry a firearm, the **Employer Concern:** " Is the employee (i.e., Shoemake) fit for duty and capable of performing the essential functions of his current position and carry a weapon without jeopardizing the health and safety of others and himself " creates a question of fact regarding pretext.[17]

---

interval); see also, _Singfield v. Akron Metro. Housing Authority_, 389 F.3d 555, 563 (6th Cir.2004) (three-month interval).

[17] In re _Green v. Wal-Mart Stores, E., L.P._, Case No. 3:11-cv-440, ¶ 13 (S.D. Ohio Jun. 25, 2013) (" '[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.' '_Dye v. Office of the Racing Comm'n_, 702 F.3d 286, 305-6 (6th Cir. 2012))'."

35. Under **Title VII**'s protection against retaliation, Shoemake need show only that a reasonable employee would have found the challenged actions in plaintiff's complaint ¶¶ 1-34 materially adverse.

36. Defendant ODRC, Ed Sheldon, Janet Tobin, and John Bond did not reasonably believe that Shoemake carried a firearm (i.e., weapon) while performing his job duties in the 2-A Housing Unit (i.e., "pod officer") supervising up to 120 adult felons in close proximity from 2014 to the present. Correctional Officers that work in pods (housing units) with inmates do not carry firearms.[18]

37. Pursuant to Ohio Revised Code Section 4112.02(J)[19], Ed Sheldon, Janet Tobin and John Bond 'aided and abetted' **ODRC** in violating Shoemake's civil rights under Chapter 4112.02 and **Title VII**.

38. **ODRC**'s treatment of Shoemake was based on a retaliatory motive and its **adverse actions** tried to deter Shoemake from questioning Ed Sheldon's authority to violate **Title VII** with impunity, and deter Shoemake from engaging in **protected activity** for fear of losing his employment.[20]

---

[18] In re _Braithwaite v. Timken Company_, 258 F.3d 488, 493-494 (6th Cir. 2001) ("if the defendant . . . did not believe in the proffered nondiscriminatory reason for its adverse employment action" it would be enough to demonstrate a retaliatory motive was the operative for Respondent's adverse act of heightened scrutiny.

[19] For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

[20] In re _Burlington N. & Santa Fe Ry. Co. v. White_, 548 U.S. 53, 61 (2006) ("adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" _Ray v. Henderson_, 217 F. 3d 1234, 1242-1243 (2000)").

39. **ODRC**'s agent (i.e., Ed Sheldon, Warden) considered Shoemake's prior discrimination charges when taking the adverse action of having Shoemake escorted off his job and labeling Shoemake as a "potential doer of workplace violence". See **Exhibit 17**, p. 4, ¶ 4; see, also, **Exhibit B**; see, also, **Exhibit C**, p. 4, ¶ 5.

40. Ed Sheldon's comment in **Exhibit C**, p. 4, ¶ 5, suggests that he interpreted Shoemake's **protected activity** in a pessimistic way; therein, there is a causal connection between the **protected activity** of Shoemake and the adverse act. [21]

> **CONCERNS OF EMPLOYER**: "Mr. Shoemake also applied for a position as a Correctional Program Specialist (e.g., EEOC Charge No. 532-2018-00460) and wasn't hired for the position. He filed several EEO Claims citing discrimination. There was no finding of wrong doing." Author: Ed Sheldon (Warden, ManCI), 2019: Independent Medical Exam (IME), Fitness For Duty Evaluation Report, April 1, 2019, Kenneth Gruenfeld, Psy.D. **See Exhibit C**.

41. Ed Sheldon's comment in the FITNESS FOR DUTY EVALUATION suggest he was aware of Shoemake's **protected activity** and **EEOC Charge No. 532-2018-00460**, which suggests a causal connection between the **protected activity** and decision to **retaliate** by subjecting Shoemake to an Independent Medical Exam (IME) for allegedly being a "potential doer of workplace violence" and threat to staff, inmates and himself because Shoemake carries a firearm while performing the essential functions of his duties as a correction officer.

> **CONCERN OF EMPLOYER:** "Is the employee (i.e., Shoemake) fit for duty and capable of performing the essential functions of his current position and carry a weapon without jeopardizing the health and safety of others and himself?" **Exhibit C**, p. 4, ¶ 8.

---

[21] See *Langenfeld v. Armstrong World Indust.*, U.S. Lexis 120892 (Case No. 2:13-cv-469, S.D. Ohio Jan. 24, 2014).

**RESPONSE TO EMPLOYER'S CONCERNS:** "Yes, the employee (i.e., Shoemake) is fit for duty and capable of performing the essential functions of his current position and carry a weapon without jeopardizing the health and safety of others or himself." **Exhibit C,** p. 4, ¶ 8. Author: Kenneth Gruenfeld, Psy.D., April 1, 2019.

42. In re *Jerome Fontaine Shoemake v. Ohio Dept. of Rehab. & Corr.* (Case No. 2019-00957 JD), Dependent ODRC testified under oath in **Defendant's Response and Objections to Plaintiff's First Set of Interrogatories** (e.g., Interrogatory No. 7) to a tribunal (i.e., Ohio Court of Claims) the following:

> **Interrogatory No. 7.** "Has the plaintiff ever been disciplined for threatening physical harm to an inmate, another correctional officer, members of supervision, or a visitor (e.g., volunteer, contractor, inmates' friends and family, and etc.) at the Mansfield Correctional Institution ("ManCI")?"
>
> **Defendant's Answer Interrogatory No. 7:** "No."

43. Ohio Admin. Code § 123:1-30-03 (Medical and Psychological Examinations) states: "**(D) Employee's failure to appear for examination**. An employee's refusal to submit to an examination, the unexcused failure to appear for an examination, or the refusal to release the results of the examination amounts to **[insubordination]**, punishable by the imposition of discipline up to and <u>including removal</u>."

44. In re *Dalton v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-827, 2014-Ohio-2658, ¶¶ 11, 15 and 39, **ODRC** fired Robert Dalton for refusing to submit to the **IME**. See Ohio Admin. Code § 123:1-30-03(D).

45. **ODRC** scheduled Shoemake for an **IME** on March 25, 2019, with Kenneth Gruenfeld, Psy.D. (e.g., FITNESS FOR DUTY EVALUATION).

46. **ODRC** could have removed Shoemake for violation of the following **ODRC** rules: **Rule 24**, interfering with, failing to cooperate in, or lying in an official

investigation or inquiry, and **Rule 7**, failure to follow post orders, administrative regulations, policies or directives if Shoemake refused to submit to the **IME**.

47. Defendant ODRC, Ed Sheldon, Janet Tobin, John Bond and William Salas aided and abetted the unlawful discrimination against Shoemake, by failing to stop retaliation against Shoemake for making complaints about race (black), sex (male), and age discrimination. Ohio R.C. § 4112.02(J) makes it unlawful for "any person" to participate in another's discriminatory practices. Because R.C. 4112.02(J) expressly imposes liability on the **individuals**, partnerships, associations, organizations, corporations, **legal representatives**, trustees, trustees in bankruptcy, receivers, and other organized groups of persons * * * [as well as] **the state** and all political subdivisions, **authorities**, **agencies**, boards, and commissions of" the state, the immunity exception in R.C. 2744.03(A)(6)(c) applies and all "persons" cited.

48. Said "persons" ( i.e., The State of Ohio, ODRC, Ed Sheldon, Janet Tobin, William Salas and John Bond) are not immune to Shoemake's claim under the aiding-and-abetting provision of Ohio R.C. § 4112.02(J).

49. "Ohio Revised Code 4112.02(J) defines "person" as one or more individuals, partnerships, associations, organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and other organized groups of persons * * * [as well as] the state and all political subdivisions, authorities, agencies, boards, and commissions of the state."[22]

---

[22] See *Johnson-Newberry v. Cuyahoga Cnty. Child & Family Servs.*, 144 N.E.3d 1058, 1064 (Ohio Ct. App. 2019).

50. On September 13, 2019, Shoemake filed charges of age discrimination (Ohio R.C. § 4112.14(A) and Ohio R.C. § 4112.99) with regards to the Ohio Department of Administrative Services, Equal Opportunity Division (DAS EOD) **Complaint No. SEOD 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 (1371)** and **EEOC Charge No. 532-2018-00460** timely with the Ohio Court of Claims (i.e., Case No. 2019-00957 JD: Shoemake v. ODRC) for age discrimination and false light invasion of privacy, et al.

51. July 16, 2019, Shoemake digitally signed **EEOC Complaint No. 522-2019-02220** for unlawful retaliation after filing **EEOC Complaint No. 532-2018-00460**. Plaintiff Shoemake believes he was retaliated against in violation of **Title VII** of the Civil Rights Act of 1964, as amended (Title VII) and age in violation of the Age Discrimination in Employment Act of 1967, as mended ("ADEA").

52. Ohio Revised Code § 4112.02(I) provides it is unlawful for "any person" to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice [as defined in § 4112.02] or because that person has made a charge, testified...or participated in any manner in [any] investigation, proceeding, or hearing under Sections 4112.01 to 4112.07. Moreover, O.R.C. § 4112.02(J) forbids "any person" to aid, abet, incite, compel, or coerce the doing of any act declared by Chapter 4112.02 of the Ohio Revised Code to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with [the law] or any order issued under it, or to attempt directly or indirectly to commit any act declared by Section 4112.02 to be an unlawful discriminatory practice.

53. Shoemake fully and promptly reported discrimination and retaliation to **ODRC, DAS EOD, OCSEA-AFSCME,** and the **EEOC-CLFO**.[23] See Plaintiff's Complaint ¶¶ 1- 52.

54. On Wednesday, November 20, 2019, 12:29 PM, the Department of Administrative Services, Equal Opportunity Division, closed discrimination complaint no. 1487 (i.e., retaliation *re* William Salas). See, also, **EEOC Charge No. 532-2019-02220** (retaliation).

55. Such reports and emails cited in Shoemake's complaint ¶¶ 1-53 to **ODRC, DAS EOD, OCSEA-AFSCME, EEOC-CLFO** and to **Employees at ManCI** by Shoemake constitute **protected activity** under Ohio (e.g., Chapter 4112.02) and Federal law (e.g., Title VII).

56. **ODRC** failed and refused to address the discrimination and retaliation that Shoemake had suffered; and, **ODRC** continued to discriminate (e.g., 2017 to the present), harass and retaliate against Shoemake following and as a result of his **protected activity**.

57. On a **"continuing violation"** Shoemake was subjected to unwelcome discrimination, retaliation, harassment and intimidation apropos William A. Salas,

---

[23] In re *Gable v. Lewis*, 201 F.3d 769, 771 (6th Cir. 2000), the protected petitioning activity was considered by the court to be an *"official written complaint"* of discrimination lodged with a state agency; *see*, also, Edwards *v.* South Carolina, 372 U.S. 229 (1963) (*finding a protest against laws promoting racial discrimination in the State of South Carolina to be protected petitioning activity*); *see*, also, Thaddeus-X *v.* Blatter, 175 F.3d 378, 395-396, fn. 10 (6th Cir. 1999) ("*a * * * grievance is protected petitioning activity under freedom of speech.*").

Janet Tobin, John Bond and Ed Sheldon, which caused a **"hostile environment"** on account of race and age while Shoemake was employed by **ODRC**.

58. White Correction Officers would harass Correction Officer Shoemake (African American over 40 years of age) and Roger Henley (African American over 40 years of age) by saying both individuals were drug dealers, dirty correction officers, crazy, and conveyors of illegal contraband to inmates.[24]

59. The **EEOC** mailed Shoemake a NOTICE OF SUIT RIGHTS on October 5, 2020, regarding **EEOC Charge No. 532-2019-02220** (i.e., retaliation *re* filing EEOC Charge No. 532-2018-00460). See, also, SEOD 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 (1441) (e.g., retaliation *re* Janet Tobin); see, also, DAS EOD Charge No. Complaint No. 1487 (e.g., retaliation *re* William Salas); see, also, DAS EOD Charge No. 1557 (e.g., retaliation *re* Ed Sheldon).

60. Defendant ODRC has engaged in a "continuing violation" because **ODRC** has committed constitutional impermissible acts of discrimination and retaliation against Shoemake from outside the limitations period into the statutory limitations period. In the instant action Shoemake has filed his complaint within ninety-days of receiving his right-to-sue letter regarding **EEOC Charge No. 532-2019-02220** (e.g., retaliation for filing EEOC Charge 532-2018-00460; DAS EOD Charge Nos. 1371, 1441, 1487 and 1557).[25] **See Exhibit ii.**

---

[24] In re *Shoemake v. Mansfield City Sch. Dist. Bd. of Educ.*, 61 F. Supp. 3d 704, 731 (N.D. Ohio 2014) ("Determining whether an environment is sufficiently hostile or abusive, requires consideration of all the circumstances, not any one factor." *Smith*, 13 N.E.3d at 675.").

[25] The Court notes the ninety-day filing requirement for Title VII claims is not a jurisdictional requirement and is subject to waiver, estoppel, and equitable tolling. See *Truitt v. County of Wayne*, 148 F.3d 644, 646-647 (6th Cir.1998); *Graham-Humphreys*, 209 F.3d at 560-561. Plaintiff does

61. **ODRC** has engaged in a "continuing violation" as such: (1) a series of related acts of discrimination (e.g., EEOC Charge No. 532-2018-00460 (Submission Date: 12/5/2017); EEOC Charge No. 532-2018-01556 (Submission Date: 4/17/2018); EEOC Charge No. 532-2019-02220 (Submission Date: 7/4/2019); DAS EOD Charge Nos. 1371, 1441, 1487 and 1557)), "where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation"; or (2) "a long-standing and demonstrable policy of discrimination" by defendant. **ODRC**'s acts of discrimination and retaliation occurring prior to Shoemake filing **EEOC Charge No. 532-2019-02220** (i.e., retaliation) are sufficiently related to those occurring within the limitation period.[26]  See Plaintiff's Complaint ¶¶ 1- 60.

62. Shoemake's complaint specifically allege that Defendant ODRC was aware he had filed administrative charges of discrimination and retaliation with **DAS EOD, OCSEA-AFSCME, EEOC-CLFO**, and United States Attorney General for the Northern District of Ohio.

## ILLEGAL EXTRACTION OF UNION DUES

63. The Ohio Civil Service Employee Association ("**OCSEA**"), **AFSCME Local 11, AFL-CIO** is the exclusive representative of the union and **ODRC**'s labor agreement for public sector employees.

---

not argue, however, that the doctrines of waiver, estoppel, or equitable tolling are applicable in this case. Therefore, the Court does not address these doctrines.

[26] See *Sharp v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2002) (quotation omitted), cert. denied, 540 U.S. 876 (2003); see, also, Davidson, 337 F.3d 1183-84.

64. **OCSEA-AFSCME** and **ODRC** are parties to a collective bargaining agreement ('CBA') effective May 12, 2018 through February 28, 2021.

65. Ohio's Public Employees Collective Bargaining Act ("Act"), Ohio R.C. § 4117, mandates that collective bargaining agreements between exclusive representatives and public employers "shall contain a provision that . . . [authorizes] the public employer to deduct the periodic dues, initiation fees, and assessments of members of the exclusive representative <u>upon presentation of a written deduction authorization by the employee</u>." Id. at § 4117.09(B)(2).

66. **ODRC** and **OCSEA-AFSCME** jointly maintain and enforce a dues deduction policy under **Article 4**, **Section 4.03**, which employees who signed a payroll deduction authorization are required to pay union dues for the term of the **CBA** and can only stop the deduction of those dues by providing notice during a thirty (30) day period commencing sixty (60) days prior to the expiration date of the **CBA**.

67. Specifically, **Article 4**, **Section 4.01**, of the **CBA** states, in part that, "The Employer (i.e., ODRC ) will deduct biweekly membership dues payable to the Union (i.e., OCSEA-AFSCME), upon receipt of a <u>voluntary written individual authorization from any bargaining employee (e.g., Shoemake)</u> on a form mutually agreed to by the Union and Employer." **See Exhibit 13**.

68. The cancellation policy prohibits employees from exercising their **First Amendment** right not to subsidize **OCSEA-AFSCME** speech until February 28, 2021; and thereafter, for the term of the next **CBA** unless the employee sends a

cancellation notice during the designated thirty (30) day period commencing sixty (60) days prior to the expiration of the agreement.

69. On the 1st and 2nd days of March, 2019, Shoemake notified **ODRC** and **OCSEA-AFSCME, Local 11, DAS EOD,** and the **EEOC**, he was withdrawing his membership from the union, and directed **ODRC** to 'immediately' cease deducting fair share fees from his paycheck.

70. **ODRC** ignored Shoemake's notification that he had withdrawn his membership and to cease deducting fair share fees from Shoemake's paycheck; thereafter, without Shoemake's consent, **ODRC** continued to deduct fair share fees from his paycheck in violation of Ohio R.C. § 4117.09(B)(2). *See, also,* **Exhibit 14**.

71. It is a violation of the **First** and **Fourteenth Amendments, Article I,** Ohio Constitution (1851), Sections 11 and 16, Ohio R.C. § 4117.09(B)(2), and Ohio R.C. § 2921.45 to extract agency fees and dues (i.e., 'property') from nonconsenting public sector employees (e.g., Shoemake) via State of Ohio payroll. When read in conjunction with Sections 1, 2, and 19, Ohio Constitution (1851), Section 16, is the equivalent of the **Fourteenth Amendment's** "due process" clause.

72. Under Ohio R.C. §§§ 2923.32(A)(1), (2), and (3), it merely takes two separate individuals to engage in a pattern of corrupt "enterprise", and there is no precondition that the perpetrators be found guilty of [any] underlying criminal offenses. The two entities engaged in a pattern of corrupt "enterprise" outlawed by the U.S. Supreme Court *re* the collection of "fair share fees" from this nonconsenting party (i.e., Shoemake) under the ***Janus***, 138 S. Ct. at 2486 ruling, is **ODRC** in concert

with **OCSEA-AFSCME. See Exhibit 15**; *see, also, Ogle v. Ohio Civil Serv. Emps. Ass'n*, No. 2:18-cv-1227 (S.D. Ohio filed Oct. 15, 2018) ("CSEA-AFSCME pointed out, <u>the state's cooperation is needed</u> for the collection of such fees in the future.' 'In other words, the state would have to be [c]omplict in ignoring the law set forth in ***Janus***."). *See, also,* 18 U.S.C.A. §§ 1961(4), 1962(c).

73. Defendant ODRC was complicit in ignoring the law set forth in ***Janus*** and continued to willfully violate Shoemake's **First Amendment** rights from  March 2, 2019 through July 16, 2020, as a matter of law.

74. Union dues authorizations signed by Shoemake in 2013, before the Supreme Court's decision in ***Janus*** cannot constitute affirmative consent by Shoemake to waive his **First Amendment** right to not pay union dues or fees. Union members who signed such agreements were not at liberty to waived their right not to join **OSCEA-AFSCME** and pay dues and fees because the Supreme Court had not yet recognized said right.

75. On June 27, 2018, the Supreme Court in ***Janus*** held union agency fee requirements unconstitutional under the **First Amendment**. *See*, <u>138 S. Ct. at 2486</u>.

76. On March 2, 2019, Shoemake filed a complaint with **ODRC** asking **ODRC** to stop illegally deducting fair share fees for his paycheck. See *Thaddeus-X v. Blatter*, 175 F.3d 395-396, fn. 10 (6th Cir. 1999) (grievance is protected activity under freedom of speech). On July 17, 2020, **OCSEA-AFSCME** stated, "We have advised the appropriate representatives from your agency to henceforth cease deducting union dues from your paychecks.

77. For 1 year, 4 months, 14 days (e.g., 2019 MAR 2 until 2020 JUL 16) **ODRC** willfully continued to violate Shoemake's **First Amendment** rights under State law and the Federal Constitution with impunity. **See Exhibit AA**.

78. **ODRC** continued to deduct fair share fees from Shoemake's paycheck in violation of Ohio R.C. § 4117.09(B)(2), Ohio R.C. § 2921.45, Article I (Ohio Constitution 1851: Section 11 and 16), **First Amendment**, and **Fourteenth Amendment** from March 2, 2019 through July 16, 2020. See *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015) ("'. . . the loss of **First Amendment** freedoms for even minimal periods of time constitutes irreparable injury.' '*Id.* at 781 (internal quotation marks omitted.'")).

79. "'**OCSEA-AFSCME** pointed out, the state's cooperation is needed for the collection of such fees in the future.' 'In other words, the state would have to be [complicit] in ignoring the law set forth in Janus.'"[27]

80. Shoemake has standing to sue **ODRC** under the **Fourteenth Amendment** in this court because the **Fourteenth  Amendment** includes the power to enforce guarantees of the **First Amendment**, which pursuant to the due process clause of the **Fourteenth Amendment**, apply to the State of Ohio. See *City of Boerner v. Flores*, 521 U.S. 507, 519 (1997).

---

[27] In re *Ogle v. Ohio Civ. Serv. Emples. Ass'n, AFSCME, Local 11*, it was noted that "OCSEA - [AFSCME] ceased the collection of mandatory fair share fees and has indicated that it has no intension to re-instate the collection of such fees in the future." 2019 U.S. Dist. LEXIS 119142, 4 (S.D. Ohio 2019). Furthermore, "'OCSEA-[AFSCME] pointed out, the state's cooperation is needed for the collection of such fees in the future.' 'In other words, the state would have to be complicit in ignoring the law set forth in Janus.'" Id. at 10.

81. It is unconstitutional for **ODRC** to deduct union dues or fees from Shoemake's wages (i.e., property) unless the State of Ohio can prove Shoemake waived his **First Amendment** right not to subsidize the union's speech from March 2, 2019 until July 16, 2020.

82. **ODRC**'s counsel's knowledge that evidence is false, however, can be inferred from the circumstances (i.e., See **Exhibit 14** and **Exhibit AA**). See Rule 1.0(g). Thus, although a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of **ODRC,** the lawyer cannot ignore an obvious falsehood. See Ohio R. Prof. Cond. 3.3, Candor Toward the Tribunal, footnote [8]. **ODRC** willfully tried to deceive the Ohio Court of Claims by denying pursuant to Civil Rule 11[28] it was deducting fair share fees from Shoemake.

83. The denial by **ODRC** to the Ohio Court of Claim (e.g., first position[29]) that **ODRC** was not collecting fair share fees from Shoemake's wages was not taken as a result of ignorance or mistake; rather, to mislead the tribunal to gain a dismissal of Shoemake's complaint.

---

[28] See *Disciplinary Counsel v. Fowerbaugh*, 74 Ohio St. 3d 187,190,658 N.E.2d 237 (1995)("knowingly ***employ or countenance *** falsehood"). Gov Bar R. I(8)(A); see, also, Professional Conduct Rule 3.3(a)(1), 3.3(a)(3)(prohibiting a lawyer from offering evidence the lawyer knows to be false), and 8.4(c)(prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation). "The signature of an attorney or pro se party constitutes a [certificate] by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." See Ohio Rules of Civil Procedure 11; see, also, Fed. P. Civ. R. 11.

[29] In re *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993), "'The Supreme Court has recognized a court's inherent power to grant relief, for 'after-discovered fraud' from a prior judgment 'regardless of the term of its entry.'" *See Hazel-Atlas Co . v. Hartford-Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250 (1944).

Page 35 of 41

84. In the present case, there is no dispute that Shoemake notified **ODRC** he was withdrawing his union membership, and informed **ODRC** to cease deducting fair share fees from his paycheck, which grossly violates his due process and freedom of speech rights under the federal constitution (Complaint ¶¶ 69, 70, 73. 76, 77, 78, 79, and 82).[30] See, *Janus*, 138 S. Ct. at 2486.

85. *Janus* ( 138 S. Ct. at 2486) invalidated non-consensual fees charged by **OCSEA-AFSCME** to nonmembers (i.e., "agency fees"); therefore, **ODRC** violated **First Amendment** rights of Shoemake by deducting fees from his wages from March 2, 2019 until July 16, 2020 without Shoemake's signed consent.

86. On February 20, 2020, Judge Patrick McGrath rendered the following decision on behalf of the Ohio Court of Claims: "Because this court is without jurisdiction to consider claims for relief premised upon alleged violations of the United States Constitution, plaintiff's claim that defendant and DAS acted in concert to violate his "due process rights," "speech," and "civil rights," must be dismissed. Furthermore, plaintiff's claim that defendant violated his constitutional rights by deducting union dues or fees from his wages must also be dismissed for **lack of subject matter jurisdiction.**"

87. The Ohio Court of Claims averred it lacks jurisdiction to hear Shoemake's complaint regarding due process and freedom of speech claims regarding *Janus* , 138 S. Ct. at 2486. Therefore, this court has jurisdiction to hear pendant state claims

[30]See *Smith. et al. v AFSCME* Council 8, No., 2:18-CV-1226, (SD Ohio 10/15/18) (Settled 1/18/2019).

against **ODRC** concerning the violation of Ohio R.C. § 4117.09(B)(2) described by the Supreme Court as prohibited conduct without the written consent of a nonmember.

88. Shoemake is not a member of **OCSEA-AFSCME**.

89. The **State of Ohio** consents to jurisdiction of the federal court by the Court of Claims abdicating **subject matter jurisdiction** to hear alleged violations of the United States Constitution in its February 20, 2020 decision regarding ODRC violating Ohio R.C. § 4117.09(B)(2), which in turn violated the **First Amendment**.

90. The Janus, 138 S. Ct. at 2486 decision of the U.S. Supreme Court, is binding on **state courts** when it decides an issue of **federal law**, such as Constitutional interpretation. Therefore, **ODRC** violated the **First** and **Fourteenth Amendment** rights of Shoemake by deducting fees from his wages from March 2, 2019 until July 16, 2020, without Shoemake's signed consent as a matter of law.

91. **ODRC** is not a private entity.

92. **ODRC** is a governmental corporation organized under the laws of the State of Ohio and is otherwise an "employer" as defined by Ohio R.C. § 4117.01(B), Ohio R.C. § 4112.02 and Ohio R.C. § 4112.01(A)(2) in respect to its corporate personhood. The Free Speech Clause prohibits *governmental* abridgment of speech. **ODRC** is a governmental entity. See *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).

93. WHEREFORE, Shoemake respectfully requests the Court pursuant to Ohio Revised Code §§§ 4112.02 (I), 4112.02(J), 4112.99, 2921.45, 4117.09(B)(2), and Ohio Revised Code § 119.12 to grant relief:

A. Declare that the acts and conduct of the defendants constitute violations of **Title VII** of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, 42 U.S.C. §§ 2000e-3 and 2000e-2 [Sections 704 or 703] *et seq.*, and of the Civil Rights Act of 1870, 42 U.S.C. § 1981, as amended, the 1st Amendment of the U.S. Constitution, the 14th Amendment of the U.S. Constitution, 42 U.S.C. § 1983, Chapter 4112.02 of the Ohio Revised Code, Ohio Revise Code § 4117.09(B)(2), and Ohio Administrative Code 4112-1-01(I), *et seg.*;

B. Grant a permanent injunction enjoining defendant, its officers, agents, employees, successors, assigns, and "any person" in active concert of participation with it as expressed by Ohio Revised Code § 4112.02(J), from engaging in any employment practices which discriminate on the basis of race, sex and age, and further enjoin any acts or conduct which has the purpose or effect of retaliating against Shoemake for asserting rights against discrimination based on race, sex and age;

C. Order defendant to institute and to otherwise carry out polices, practices and programs which provide equal employment opportunities for employees which have the purpose and effect of eradicating past and present unlawful employment practices;

D. Order defendant to make Shoemake whole by providing appropriate backpay and front pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of its unlawful employment practices,

including but not limited to, promoting Shoemake to the position of Correctional Program Specialist and providing relief from retaliation by defendant(s) against Shoemake;

E. Grant to plaintiff appropriate compensatory damages (e.g., humiliation and mental anguish, loss of opportunity, loss of enjoyment of life, pain and suffering, and anxiety) of $300,000;

F. Grant to plaintiff $10,000 from each defendant (i.e., ODRC, Edward Sheldon ("Ed Sheldon"), Janet Tobin, John Bond, and William Salas) that willfully aided and abetted **ODRC** to violate Shoemake's rights pursuant to Ohio Revised Code § 4112.02(J).

G: Grant to plaintiff $300,000 for defendant violating Title VII (retaliation), First Amendment, Fourteenth Amendment, and Section 1983 pursuant to the Civil Rights Act of 1991.

H: Grant such further relief as the Court deems necessary and proper and in the public interest.

Respectfully submitted,

*Jerome F. Shoemake*

Jerome F. Shoemake, Pro Se
147 North Mulberry Street
Mansfield, Ohio 44902
Phone  (419) 525-1634
Email: shoeberry@aol.com

IT IS HEREBY CERTIFIED that service of the foregoing **PLAINTIFF'S COMPLAINT** has been made upon the following by depositing a copy in the United States mail, certified delivery, postage prepaid, upon the **Ohio Department of Rehabilitation and Correction, et al.**, 4545 Fisher Road, Suite D, Columbus, Ohio 43228 this ___ day of December, 2020.

Office of the Clerk
Carl B. Stokes U.S. Court House
801 West Superior Avenue
Cleveland, Ohio  44113

**Ohio Department of Rehabilitation and Correction, et al.**
4545 Fisher Road, Suite D
Columbus, Ohio 43228

*Jerome F. Shoemake*
Signature

Jerome F. Shoemake
Print

Pro se
Counsel For

147 North Mulberry
Address

Mansfield, Ohio 44902
City, State, and Zip Code

(419) 525-1634
(Area Code)  Telephone Number

Page **40** of 41

# VERIFICATION

| STATE OF OHIO | ) | Sworn Statement |
|---|---|---|
| COUNTY OF RICHLAND | ) | |
| | ) | |

I, JEROME F. SHOEMAKE, declare under penalty of perjury under the laws of the United States of America that the **Plaintiff's Complaints** are true and accurate to the best of my knowledge and belief, pursuant to 28 U.S. Code § 1746.

*Jerome F Shoemake*

Jerome F. Shoemake (pro se)

Subscribed in my presence this 81ˢᵗ day of December, 2020.

KRISTIN TAYLOR
NOTARY PUBLIC, STATE OP OHIO
My Commission Expires
December 2, 2023

*Kristin Taylor*

NOTARY PUBLIC